UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **BONNIE KRAMER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | CIVIL ACTION NO. 1:13-CV-591-LY |
| **v.** | § | |
| | § | |
| **LAKEHILLS SOUTH, LP,** | § | |
| **A TEXAS LIMITED PARTNERSHIP** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

**TO THE HONORABLE COURT:**

NOW COMES, Defendant, Lakehills South, LP, by and through its undersigned counsel, the Bradley B. Clark Law Group, P.C., and pursuant to Rules 12(b)(1), 12(b)(6), and 12(e) of the Federal Rules of Civil Procedure, hereby moves to dismiss the above-captioned Complaint or, in the alternative, for a more definite statement. In support thereof, Defendant states as follows:

The Defendant is the owner and landlord of the Lake Hills Plaza, a "strip mall" in Austin, Texas. Plaintiff, Bonnie Kramer, is a resident of Cuyahoga County, Ohio (Complaint, ¶ 4). Ms. Kramer apparently suffers from multiple sclerosis and uses a wheelchair (Complaint, ¶1). A PACER search by the undersigned revealed 17 cases brought by Ms. Kramer against retail establishments in the Western District of Texas—Austin Division, 73 cases brought by Ms. Kramer against retail establishments in the Northern District of Ohio where she lives, and 2 cases in the Southern District of Ohio. Ms. Kramer appears, therefore, to have filed 92 complaints against various retail establishments in at least three districts, all claiming violations of the

Americans with Disabilities Act, (ADA, 42 U.S.C. § 12181 *et seq.*). According to her complaint in *Kramer v. MIDAMCO,* Case No. 1:07 CV 3164, N.D. Ohio—Eastern Division, Ms. Kramer is a member of the non-profit advocacy group, Disabled Patriots of America, Inc.

The instant Complaint appears to be cut from the same ilk as her other lawsuits: Ms. Kramer alleges that: she has family in in the area, she has been to the retail establishment, she encountered architectural barriers at the establishment, and she intends to return to the establishment when she revisits family. (Complaint, ¶¶ 6, 11-13).

The alleged ADA violations are equally boilerplate—in this case they are:

> (a) [t]he sales counter is located too high for an individual in a wheelchair to utilize[;]
>
> (b) [t]he bar counter is located too high for an individual in a wheelchair to utilize[;]
>
> (c) [t]here are curb ramps at the property that project into designated accessible parking areas, making them unusable by an individual in a wheelchair[;]
>
> (d) [t]he property lacks a continuous accessible route that connects all accessible buildings, accessible elements, and accessible spaces[;]
>
> (e) [t]here are curb ramps at the property that project into vehicular lanes of traffic, making it dangerous for an individual in a wheelchair to utilize[;]
>
> (f) [t]here are curb ramps that lack proper edge protection, which creates a dangerous condition for an individual in a wheelchair[;]
>
> (g) [t]here are signs designated accessible parking spaces that are too low for an individual in a wheelchair to utilize[;]
>
> (h) [t]here are designated accessible parking spaces that have uneven surfaces, which create a dangerous condition to an individual in a wheelchair[;]
>
> (i) [t]here are exposed pipes in lavatories in the public restroom which creates a burning hazard to an individual in a wheelchair[;]

>    (j) [t]here is a corporate policy that allows for buckets to obstruct the clear floor space in the accessible toilet room of the public restroom so that an individual in a wheelchair cannot utilize such[;]
>
>    (k) [t]here are dispensers in the public restrooms that are located too high for an individual in a wheelchair to utilize[;]
>
>    (l) [t]he mirror in the public restroom is located too high for an individual in a wheelchair to utilize[;]
>
>    (m) [t]he lavatories in the public restrooms lack sufficient knee and toe clearance for an individual in a wheelchair to utilize[;]
>
>    (n) [t]here is insufficient clear floor space in the toilet compartment of the public restroom for an individual in a wheelchair to utilize such[;]
>
>    (o) [t]he public restroom lacks grab-bars for an individual in a wheelchair to be able to utilize the facility[; and]
>
>    (p) [t]here is a corporate policy that allows for trash receptacles to obstruct the clear floor space in the public restroom so that an individual in a wheelchair cannot utilize such.

(Complaint, ¶ 15).

Ms. Kramer seeks injunctive relief and attorney's fees but not monetary damages.

    **A.**    **Plaintiff Lacks Standing to Bring These Claims.**

The instant Complaint should be dismissed because Plaintiff does not have standing to bring these claims. Challenges to standing are analyzed pursuant to Rule 12(b)(1)—lack of subject matter jurisdiction—and the Plaintiff has the burden of establishing her standing. *See Mirant Potomac River, LLC v. EPA*, 577 F.3rd 223, 226 (4th Cir. 2009). Moreover, any allegations in the pleadings are "mere evidence" on the issue, and may be contested by evidence outside the complaint. *See Evans v. B.F. Perkins Co.*, 166 F.3rd 642, 647 (4th Cir. 1999).

To show Article III standing, a plaintiff has the burden of proving: (1) that she suffered an "injury in fact," (2) a causal relationship between the injury and the challenged conduct, and

(3) that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An "injury in fact" is a harm that is "concrete and particularized" and "actual or imminent." *Id*. at 560. The plaintiff must show that she "sustained" or is immediately in danger of sustaining some direct injury as the result of the challenged…conduct and [that] the injury or threat of injury [is] both real and immediate…." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks and citations omitted). Further, "because injunctions regulate future conduct, a party seeking injunctive relief must allege…a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury." *Wooden v. Bd. of Regents Univ. Sys. of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2004).

Because the ADA provides for injunctive relief, plaintiffs who encounter barriers at public accommodations have standing to bring claims only if they can show a plausible intention or desire to return to the place but for the barriers to access. *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002); *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2004). Intent to return to the place of injury "some day" is insufficient. *Lujan*, 504 U.S. at 564 ("[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require").

"[An] ADA plaintiff cannot manufacture standing to sue in a federal court by simply claiming that [s]he intends to return to the Facility. Rather, in evaluating the likelihood of return, the courts examine four factors: (1) proximity of the place of public accommodation to the plaintiff's residence; (2) plaintiff's past patronage of defendant's business; (3) the definitiveness of the plaintiff's plans to return; and (4) the plaintiff's frequency of travel near the accommodation in question." *Wilson v. Kayo Oil*, No. 06-CV-1035 BEN (AJB), 2007 U.S. Dist.

LEXIS 79832 at *5 (S.D. Cal. Oct. 25, 2007); *see also Norkunas v. Park Road Shopping Ctr., Inc.*, 777 F.Supp.2d 998, 1002 (W.D.N.C. 2011); *Payne v. Sears, Roebuck & Co.*, ___ F.Supp.2d ___, 2012 U.S.Dist. LXIS 75486 (W.D.N.C., May 31, 2012).

Again, there is no claim here for damages from past injury; the only relief sought is injunctive in nature. In order to demonstrate standing for injunctive relief under the ADA, a plaintiff must show that she "will suffer an injury in fact which is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical." *Proctor v. Prince George's Hosp. Ctr.*, 32 F.Supp.2d 830, 832 (D.Md. 1998) (*quoting Tyler v. The Kansas City Lottery*, 14 F.Supp.2d 1220, 1224 (D. Kan. 1998)). In addition, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

The first factor weighs heavily against Ms. Kramer: she lives in Cuyahoga County, Ohio, more than 1,400 miles from Austin Texas. The probability that she is going to travel that distance just to shop at Lake Hills Plaza is very slim, at best.

Nor is Ms. Kramer's "past patronage" of the shopping center—the second factor—any more impressive. Ms. Kramer claims to have visited Lake Hills Plaza only once, on February 20, 2013 (Complaint, ¶ 11). She simply has no past patronage upon which to base her Complaint much less, Article III standing.

Also, Ms. Kramer alleges no definite plans to return to Lake Hills Plaza with any description of concrete plans—the third factor (Complaint, ¶ 12). Again, "a profession of an 'intent' to return…is simply not enough" without any description of concrete plans. *Lujan*, 504 US at 564. Ms. Kramer neither identifies the "family" she visits; where this family might be located; the relationship to this "family"; the frequency with which she visits this family; nor any

concrete details of her intent to return. Thus, she has failed to demonstrate that any visit would bring her even close to Lake Hills Plaza or the many other Austin retail centers spread throughout Austin which she has sued.

Moreover, Ms. Kramer does not identify the tenants at Lake Hills Plaza that she visited on February 20, 2013, nor the tenants she in tends to "avail herself of" upon her intended visit in December 2013. Additionally, Ms. Kramer does not identify with any specificity when in December 2013 she plans to return to Austin, how she intends to return, or how long she intends to stay. And more illuminative is the fact that more than nine months will have passed between her single visit to Lake Hills Plaza and her intended return to Austin in December 2013. She certainly does not allege that she intends to return and tan at Tan Etc., pick up pool supplies from Leslie's Pools, or pick up pet supplies from Tomlinson's Feed and Pets—all tenants at Lake Hills Plaza.

Based on the allegations in her Complaint, there is no "real and immediate threat of harm" to Ms. Kramer. And while the frequency of Ms. Kramer's litigation, in and of itself, may not be a major consideration, the fact remains that she has filed 17 similar cases in the Western District of Texas—Austin Division, alleging nearly identical claims at properties spread throughout the city all the while living more than 1,400 miles away.

The tenants at Lake Hill Plaza are: Outback Steakhouse, Pumpkin Patch Children's Store (a children's resale store), Tan Etc. (a tanning salon), Teacher Heaven (a teacher's supply store), Super Salad, Leslie's Pools (a pool supply company), Tomlinson's Feed & Pets (a pet supply store), Austin Gift Co., Dollar Tree, Cost Cutters (a family hair salon), Twin Liquors, RDA Promark (a professional beauty supply store), Azul Tequila, Cricket Wireless, EZ Braces (orthodontics), Freedom Eyecare, Nail & Spa, and Dong Nai Restaurant.  Not only does Ms.

Kramer's Complaint fail to state which of these tenants she patronized on February 20, 2013, but it also fails to state which of these tenants she intends to patronize in the future. It is improbable, at best, that she actually patronized—or will in the future actually patronize—many of Lake Hills Plaza's tenants.[1]

Finally, as noted above, more than nine months will have passed between Ms. Kramer's last visit to Austin and her next intended visit. And the fact that she lives more than 1,400 miles away from Lake Hills Plaza and apparently has only been to the shopping center once, shows a very, very low frequency of travel near the shopping center.

Ms. Kramer has failed to show that she is in any actual or imminent danger of future harm from the alleged ADA violations at the Lake Hills Plaza. For the foregoing reasons, Ms. Kramer lacks standing to bring this lawsuit and the Complaint should therefore be dismissed.

B.      **The Complaint Should be Dismissed for Failure to State a Claim.**

Under the Federal Rules, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, as the Supreme Court recently stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter…to state a claim…." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court also noted that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550

---

[1] In *Bonnie Kramer v. MIDAMCO*, Case No. 1:07-CV-3164 in the Northern District of Ohio—Eastern Division, Ms. Kramer testified under oath that she used the RTA Paratransit service to go to the facility involved in that litigation in July 2007 and that she visited a Stein Mart at the facility which formed the basis of her complaint against MIDAMCO. In its opinion granting MIDAMCO's motion for summary judgment against Ms. Kramer (Doc. #115), Judge Nugent noted that "MIDAMCO submitted records from the Greater Cleveland Regional Transit Authority, with an attached sworn and notarized certificate attesting to the authenticity of the records. These records show that Ms. Kramer did not use the RTA Paratransit service to go to the Facility anytime in July of 2007." Additionally, Judge Nugent noted that "Midamco also submitted an affidavit from Robert Walick, the Director of Commercial Properties for MIDAMCO and managing agent of the Solon Square Shopping Center. He attested, in a sworn and notarized statement, that Stein Mart was not open to the public at the Solon Square location until October 27, 2007 (after Ms. Kramer's Complaint was filed)…and that no sign for Stein Mart existed or was affixed to the building, identifying it as a tenant prior to October 3, 2007 (long after Ms. Kramer's alleged July 21, 2007 visit)."

U.S. 544 (2007). The Complaint here consists of noting but "threadbare recitals" and provides no factual basis for any of the claims.

Plaintiff's allegations in paragraph 15 fall short of being anything more than conclusory allegations of architectural barriers. Plaintiff has failed to identify which sales counter is to high, which bar counter is to high, which curb ramps are unusable, which curb ramps lack proper edge protection, which signs are too low, and which public restroom she encountered the alleged barriers at.

Plaintiff's allegation that "[t]he property lacks a continuous accessible route that connects all accessible buildings, accessible elements, and accessible spaces" is merely conclusory. Plaintiff does not allege what "accessible routes" should be provided; how the sidewalks and parking lot should be configured to allow for sufficient access; nor how the current configuration impedes access. Moreover, Plaintiff has not alleged any facts suggesting that disabled individuals are unable to shop at Lake Hills Plaza.

Plaintiff's allegations about a sales and bar counter being to high for an individual in a wheelchair are vague allegations apparently about the inside of Lake Hills Plaza. Lake Hills Plaza is a "strip mall"—all of the stores in the Plaza are accessible only from the outside sidewalk. There are no internal hallways, no public restrooms (more on this particular allegation below), no common areas of any kind other than the parking lot and sidewalks. If, in fact, Ms. Kramer had encountered any obstructions inside the structure, it would have been because a particular tenant had so configured the interior of its leased space (like the height of countertops). Telling, however, Plaintiff did not sue any of the companies who occupy those leased spaces in Lake Hills Plaza. Naming individual stores as defendants would have required Plaintiff to

actually allege facts pertaining to that retail tenant, as opposed to merely parroting the elements of the cause of action.

One-half of the architectural barriers alleged by Plaintiff are directed at a "public restroom" that simply does not exist. Lake Hills Plaza does not have a public restroom. One cannot help but surmise that these claims, like those made by Ms. Kramer in the MIDAMCO litigation, are false. *See* Footnote 1, above.

The Complaint's utter lack of factual specificity reflects back, as well, on the question of standing. Had Ms. Kramer actually visited Lake Hills Plaza, she would presumably have known that it was a strip mall, and would have drafted her allegations more carefully. Instead, and given that Ms. Kramer has filed over 90 other lawsuits of a similar nature (17 in this district alone), the allegations in the Complaint appear to be nothing more than boilerplate accusations which Plaintiff levies against any and all commercial establishments, regardless of their actual condition.[2]

For these reasons Plaintiff's Complaint fails to allege a cause of action upon which relief may be granted. The vast majority of paragraphs in Plaintiff's Complaint contain nothing but conclusory allegations about Lake Hills Plaza, and the sparse factual statements provided do not, and could not, pertain to a strip mall like Lake Hills Plaza—especially when it does not have a public restroom. Defendant requests that the Complaint be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[2] Recovery of attorney's fees under the ADA provides an economic incentive for plaintiff's lawyers to not provide pre-suit notice and instead file needless lawsuits. *See Rodriguez v. Investco, LLC*, 305 F.Supp.2d 1278 (M.D. Fla. 2004). Most of the cases are quickly settled by the parties for little more than the promise to remedy the alleged violations and the payment of a few thousand dollars. Based on the undersigned's analysis of the 17 cases filed by Ms. Kramer in this Court, the average time from the date the case was filed to the date the case was closed is 2.6 months.

### C.     Motion for a More Definite Statement.

In the alternative, and to the extent that the Court deems that any of the factual allegations in the Complaint state a minimal cause of action, Defendant respectfully moves for a more definite statement. As the Complaint now stands, Defendant is unable to properly respond.

As argued above, the allegations in the Complaint provide little, if any, information as to the impediments to access which Plaintiff contends exist at Lake Hills Plaza (*i.e.*, two appear to be inside some unidentified tenant's premises, six appear to be vaguely tied to the parking lot, and the remaining eight in a public restroom that does not exist). Vague, ambiguous, boilerplate, and conclusory allegations do not allow Defendant to formulate a response. Furthermore, Defendant cannot evaluate whether any of these alleged barriers existed prior to passage of the ADA (Lake Hills Plaza was built in 1980) and prior to Defendant's purchase of the property in 2011. An order requiring a more definite statement is appropriate where the defendant is unable to determine the propriety of interposing a waivable defense. *See Lunderstadt v. Colafella*, 885 F.2d 66, 68-69 (3rd Cir. 1989).

More importantly, as noted above, all but two of the interior spaces at Lake Hills Plaza are leased out to individual retail tenants. Under the applicable leases, each tenant may be solely responsible for the configuration and maintenance of their individual stores. If, therefore, any ADA violation existed within an interior space (which Defendant denies), the individual retail tenant would be a necessary party, and joinder would be appropriate under Rule 19.

As the Complaint now stands, Defendant is unable to determine whether any of its tenants are necessary parties. Defendant is equally unable to determine exactly what ADA violations exist and, more importantly, where they exist, or whether such violations actually have

10

any impact on Ms. Kramer's ability to shop at Lake Hills Plaza. For these reasons, a more definite statement is required before Defendant can file its responsive pleadings.

## CONCLUSION

For the reasons stated above, Plaintiff lacks standing to seek the injunctive relief in the Complaint, and the Complaint should be dismissed pursuant to Rule 12(b)(1). Further, the conclusory allegations in the Complaint fail to contain sufficient factual allegations to actually state a cause of action, and dismissal is appropriate under Rule 12(b)(6). Finally, and in the alternative, Defendant is unable to determine what obstacles exist to accessibility (as well as their location), and therefore cannot formulate a proper response, nor determine whether any of the tenants at Lake Hills Plaza should be joined as necessary parties. In the event that the Complaint is not dismissed, therefore, Plaintiff should be required to provide a more definite statement. Defendant, Lake Hills Plaza, respectfully requests that the Court grant its motion and dismiss the Complaint in its entirety, with prejudice. In the alternative, Defendant requests that the Court order a more definite statement from Plaintiff. Defendant also requests that the Court award reasonable attorney's fees to the Defendant, and for any other relief that the Court may deem appropriate.

Respectfully submitted,

THE BRADLEY B. CLARK LAW GROUP, P.C.
P.O. Box 143743
Austin, Texas 78714
Telephone: (512) 298-1735
Fax: (512) 298-1745
bradley@bradleybclark.com

By: /s/ Bradley B. Clark
    Bradley B. Clark
    Texas Bar No. 24040697

Attorney for Defendant Lakehills South, LP

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2013, a true and correct copy of the foregoing document was served upon all counsel and/or parties of record, as indicated below, via court-delivered email:

Pete M. Monismith
3945 Forbes Ave., #175
Pittsburg, PA 15213
Telephone: (724) 610-1881
Facsimile: (412) 258-1309
Email: pete@monismithlaw.com

/s/ Bradley B. Clark
Bradley B. Clark

Attorney for Defendant Lakehills South, LP