IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **BONNIE KRAMER** | § | |
| | § | |
| **v.** | § | A-13-CA-591 LY |
| | § | |
| **LAKEHILLS SOUTH, LP,** | § | |
| **A TEXAS LIMITED PARTNERSHIP** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant's First Amended Motion to Dismiss or, in the Alternative, for a More Definite Statement (Dkt. # 15), filed on September 13, 2013; Plaintiff's Opposition to Defendant's Motion to Dismiss and for a More Definite Statement (Dkt. # 18), filed on September 18, 2013; and Defendant's Reply to Plaintiff's Response (Dkt. # 24), filed on October 4, 2013. On September 23, 2013, the District Court referred this case to the instant Magistrate Court for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended.

**I. GENERAL BACKGROUND**

On July 16, 2013, Plaintiff Bonnie Kramer filed this lawsuit under Title III of the Americans With Disabilities Act against Lakehills South, LP, a Texas Limited Partnership, the owner and landlord of the Lakehills Plaza, a "strip mall" in Austin, Texas.[1]   Kramer has multiple sclerosis,

---

[1] Kramer is a prolific filer and has filed 23 lawsuits in the Western District of Texas. The majority of this lawsuits have settled or were voluntarily dismissed by Kramer. Several of this lawsuits are currently pending before the District Court. *See* 1:13-CV-590- LY; 1:13-CV-596-LY; 1:13-CV-670-LY; 1:13-CV-673-LY; 1:13-CV-777-LY; 1:13-CV-845-LY; and 1:13-CV-903-LY.

ambulates in a wheelchair, and qualifies as a disabled person within the meaning of the ADA. She resides in Cuyahoga County, Ohio. In February 2013, she was visiting her son in Austin, Texas, and went shopping at Lake Hills Plaza, where she patronized several stores and made purchases at the Austin Gift Company and Azul Tequila. Kramer alleges that during her shopping trip, she encountered numerous architectural barriers at the property which discriminated against her on the basis of her disability. Kramer alleges that she planned to return to the Lakehills Plaza in December 2013, when she would visit her son again. She seeks injunctive relief for the removal of the alleged architectural barriers, attorney's fees, litigation expenses, and costs pursuant to the ADA, 42 U.S.C. § 12181 et seq.

On September 13, 2013, Lakehills filed their Motion to Dismiss under Rules 12(b)(1), 12(b)(6), and 12(e) of the Federal Rules of Civil Procedure, arguing that Kramer's lawsuit should be dismissed because (1) she lacks standing to seek the injunctive relief requested in her Amended Complaint; and (2) she fails to state a valid claim for relief under the ADA. In the alternative, Lakehills requests that the Court order Kramer to file a more definite statement.

## II. ANALYSIS

The ADA is a "broad mandate" of "comprehensive character" and "sweeping purpose" intended "to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (citation and quotation marks omitted). The ADA forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III. *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). Kramer has filed this suit pursuant to Title III of the ADA, which prescribes that: "No individual

shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "Remedies available under Title III of the ADA are the same as those under Title II of the Civil Rights Acts of 1964, 42 U.S.C. § 2000a et seq., for which there is only injunctive relief." *Frame v. City of Arlington*, 575 F.3d 432, 438 n. 5 (5th Cir. 2009).

As noted, Lakehills argues that Kramer's lawsuit should be dismissed under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a valid claim for relief under the ADA. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (*citing Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)), *cert. denied*, 536 U.S. 960 (2002). Accordingly, the Court will address Defendant's Rule 12(b)(1) Motion first and determine whether Kramer has standing under the ADA to bring this lawsuit.

**A.     Defendant's Rule 12(b)(1) Motion to Dismiss**

Federal Rule of Civil Procedure Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction. Federal courts are tribunals of limited subject matter jurisdiction and may only entertain a case that fits within the judicial power of Article III of the Constitution and a statutory grant of subject matter jurisdiction, such as federal question jurisdiction under 28 U.S.C. § 1331 and diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a)(1). 13D CHARLES ALAN WRIGHT, ARTHUR R. MILLER. EDWARD H. COOPER, & RICHARD D. FREER, FEDERAL PRACTICE AND PROCEDURE § 3567 (3d ed. 2008). Subject matter jurisdiction includes the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

3

In order to demonstrate standing, a plaintiff first must demonstrate she suffered "injury in fact," which means invasion of a legally protected interest that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Second, standing requires a causal connection between the conduct complained of and the injury plaintiff suffered. *Id.* "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561(internal citations and quotation marks omitted). The party invoking federal jurisdiction bears the burden of proof for establishing these elements. *Id.* General factual allegations at the pleading stage may suffice since on a motion to dismiss courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal citations and quotation marks omitted).

Where a plaintiff seeks declaratory and injunctive relief, as in this case, the plaintiff must also show a significant possibility of future harm; it is insufficient to demonstrate only past injury. *See O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Neither the Supreme Court nor the Fifth Circuit has specifically addressed standing issues in the Title III ADA context. For guidance in the Title III area, many courts have relied on the Supreme Court's opinions in *Lujan* and *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), despite the fact that these cases do not deal with the ADA and involve very different factual scenarios.[2] In *Lyons*, the Supreme Court found that the plaintiff lacked standing to seek declaratory and injunctive relief prohibiting the City's police department from using chokeholds because of "the speculative nature of Lyons' claim of future injury." 461 U.S. at 111. The Court held that a "plaintiff

---

[2] See *Betancourt v. Federated Dep't Stores*, 732 F. Supp.2d 693 (W.D. Tex. 2010) and *Betancourt v. Ingram Park Mall, L.P.*, 735 F. Supp.2d 587 (W.D. Tex. 2010), for a thorough and in-depth discussion of this issue.

must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct. *Id.* at 102. The Court found that the plaintiff failed to demonstrate this because he failed to allege that he would have another encounter with the police and further allege either "(1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that the City ordered or authorized police officers to act in such manner." *Id*. at 105-06.

In *Lujan*, environmental groups brought an action challenging a regulation of the Secretary of the Interior which required other agencies to confer with him under the Endangered Species Act only with respect to federally funded projects in the United States and on the high seas. The plaintiffs sought an injunction requiring the Secretary of the Interior to promulgate a new rule extending the geographic coverage to foreign nations. In addressing standing, the Court stated:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well. The existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily "substantially more difficult" to establish.

*Id.* at 561-62.  In holding that the plaintiffs did not assert sufficiently imminent injury to have standing, the Court found that to show standing plaintiff had to show "not only that listed species were in fact being threatened by funded activities abroad, but also that one or more of respondents' members would thereby be 'directly' affected apart from their 'special interest' in th[e] subject." *Id.* at 563.  The plaintiffs had no specific future plans to go abroad and observe the endangered species, and thus the Court concluded that their "profession of an 'inten[t]' to return to the places they had visited before . . . is simply not enough.  Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id*

Numerous courts have applied *Lyons* and *Lujan* to hold that a plaintiff lacks standing to seek injunctive relief under Title III of the ADA unless she alleges a concrete, particularized and credible plan to return to the public accommodation in question on a specific future date.  *Bentancourt*, 732 F. Supp.2d at 703.  These courts have found that the likelihood of future injury is measured by whether the plaintiff is "likely to return" to the defendant's business, which is determined by considering four factors: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage of the defendant's business; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of travel near the defendant.  *See e.g., Norkunas v. Park Road Shopping Center, Inc.*, 777 F. Supp.2d 998, 1002 (W.D.N.C. 2011).

Lakehills relies on the "intent to return" test to argue that Kramer has failed to demonstrate standing since she has failed to show "a plausible intention or desire to return to the place but for the barriers to access." Defendant's Brief at p. 6.  This "intent to return" approach, however, has been severely criticized by a number of commentators and courts.  *Betancourt*, 732 F. Supp.2d at 703.

6

These commentators note that allowing standing in most Title III cases is actually consistent with the holdings in *Lyons* and *Lujan* since "the 'odds' of the injury recurring are certain where a building is not in compliance with the ADA," and the plaintiff and "every other person with the same disability" will confront the same barrier on every future visit. *Id.* (quoting Adam A. Milani, Wheelchair Users Who Lack "Standing": Another Procedural Threshold Blocking Enforcement of Titles II and III of the ADA, 39 WAKE FOREST L. REV. 69, 113 (Spring 2004)). Moreover, disabled plaintiffs should not have to establish imminent future injuries because "they have an actual and present injury—they are currently deterred from visiting a building." *Id.*

Numerous courts have rejected the "intent to return" theory, and instead have relied on the "deterrent effect" doctrine in determining whether a Title III plaintiff has established standing.[3] Under this theory, a disabled individual suffers a cognizable injury if he is *deterred* from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there. *Chapman v. Pier 1 Imports*, 631 F.3d 939, 950 (9th Cir. 2011). "Just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's

---

[3] *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074-75 (7th Cir. 2013) (finding that plaintiff had standing to sue hotel given her past travel history and her affirmative desire to stay at the hotel but for the alleged violations); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir.) (holding that the plaintiff had Article III standing because "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury'" for standing purposes), *cert. denied*, 537 U.S. 1030 (2002); *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (noting that ADA plaintiffs need not engage in the "futile gesture" of visiting a building containing known barriers that the owner has no intention of remedying); *Hunter v. Branch Banking and Trust Co.*, 2013 WL 4052411, at * 3 (N.D. Tex. Aug. 12, 2013) (noting that "[t]he second recognized way to establish injury-in-fact is for the plaintiff to show that she is continually injured by being deterred from making use of the allegedly noncompliant public accommodation); and *Betancourt*, 732 F. Supp.2d at 709 ("any disabled plaintiff who alleges that she is being denied the opportunity to visit or is currently being deterred from visiting a public accommodation that is violating Title III alleges sufficient present injury in fact for prospective equitable relief.").

existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a store suffers the ongoing actual injury of lack of access to the store." *Id.* (internal quotation marks and citation omitted). "This theory is predicated on the ADA's language stating that a plaintiff need not 'engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply" with the ADA. *Hunter*, 2013 WL 4052411 at * 3 (quoting 42 U.S.C. § 12188(a)(1)). The Fifth Circuit appears to have endorsed this theory in *Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir. 2011) (a Title II ADA case), *cert. denied*, 132 S.Ct. 1561 (2012), when it stated that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the inaccessible object or place] affects his activities in some concrete way." Thus, "in an ADA Title III case, the risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is 'able and ready' to visit the facility once it is made compliant. If the disabled plaintiff returns to the location, the same discrimination will occur until the facility is made compliant." *Betancourt*, 732 F. Supp.2d at 709.

Applying the "deterrent effect" theory to the instant case, Kramer has alleged sufficient facts to establish standing to bring this Title III lawsuit. Kramer alleges that she visited the shopping center at issue and that she encountered numerous ADA violations in the form of architectural barriers that deprived her of the use and enjoyment of the stores' goods and services and by endangering her safety. Furthermore, Kramer alleges that while she would like to visit the shopping center again during her planned trip to Austin in December 2013, she notes that "it would be a futile gesture to visit Defendant's mall unless and until it is brought into compliance with the Americans

with Disabilities Act." Kramer Aff. at ¶ 10. This is sufficient at the pleading stage to show standing.[4] Accordingly, Lakehills' Rule 12(b)(1) Motion to Dismiss should be denied.

B. **Defendant's 12(b)(6) Motion to Dismiss**

Lakehills also argues that Kramer's case should be dismissed for failure to state a claim under Rule 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is

---

[4]*See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1040 (9th Cir. 2008) (holding that plaintiff suffered an injury that is concrete and particularized because he alleged in his amended complaint that he personally suffered discrimination as a result of the barriers in place during his visits to 7–Eleven and that those barriers have deterred him on at least four occasions from patronizing the store and he plans on visiting the store once a year during his trips to Disneyland); *Betancourt*, 732 F. Supp.2d at 710-11 (holding that plaintiff alleged sufficient facts to establish standing even though she lived over 700 miles from property in question where it would be futile for plaintiff to visit store again since still noncompliant).

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555 (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. See *Id.* at 555 & n. 3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

To state a prima facie claim under Title III of the ADA, a plaintiff must show: (1) that she is "disabled" as defined by the ADA; (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) that the defendant discriminated against the plaintiff because of the plaintiff's disability. 42 U.S.C. § 12182(a). *See also, Smith v. Bastrop Medical Clinic, P.A., Inc.*, 2011 WL 3844223, at * 4 (W.D. Tex. Aug. 29, 2011). To prevail in a claim of discrimination based on an architectural barrier, plaintiffs must also prove that (1) the existing facility presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable. *Greer v. EDK Allen II LP*, 2011 WL 1656406, at * 3 (E.D. Tex. March 8, 2011).

Kramer alleges that during her shopping trip to Lakehills, she encountered numerous architectural barriers at the property which discriminated against her on the basis of his disability, including:

a. The sales counter is located too high for an individual in a wheelchair to utilize.

b. The bar counter is located too high for an individual in a wheelchair to utilize.

c. There are curb ramps at the property that project into designated accessible parking areas, making them unusable by an individual in a wheelchair.

d. The property lacks a continuous accessible route that connects all accessible buildings, accessible elements, and accessible spaces.

e. There are curb ramps at the property that project into vehicular lanes of traffic, making it dangerous for an individual in a wheelchair to utilize.

f. There are curb ramps that lack proper edge protection, which creates a dangerous condition for an individual in a wheelchair.

g. There are signs designating accessible parking spaces that are too low for an individual in a wheelchair to utilize.

h. There are designated accessible parking spaces that have uneven surfaces, which create a dangerous condition to an individual in a wheelchair.

i. There are exposed pipes in the lavatories in the public restroom which creates a burning hazard to an individual in a wheelchair.

j. There is a corporate policy that allows for buckets to obstruct the clear floor space in the accessible toilet room of the public restroom so that an individual in a wheelchair cannot utilize such.

k. There are dispensers in the public restrooms that are located too high for an individual in a wheelchair to utilize.

l. The mirror in the public restroom is located too high for an individual in a wheelchair to utilize.

m. The lavatories in the public restrooms lack sufficient knee and toe clearance for an individual in a wheelchair to utilize.

11

      n.      There is insufficient clear floor space in the toilet compartment of the public restroom for an individual in a wheelchair to utilize such.

      o      The public restroom lacks grab-bars for an individual in a wheelchair to be able to utilize the facility.

      p.      There is a corporate policy that allows for trash receptacles to obstruct the clear floor space in the public restroom so that an individual in a wheelchair cannot utilize such.

Plaintiff's First Amended Complaint, at ¶ 15. Clearly, Kramer has alleged sufficient facts to support her ADA claims under the liberal pleading requirements of Rules 8 and 12(b)(6). Accordingly, Lakehills' Motion to Dismiss under Rule 12(b)(6) should be denied. The Court also finds that Defendant's Alternative Motion for a More Definite Statement should also be denied.

### III. RECOMMENDATION

Based upon the foregoing, the Magistrate Court **RECOMMENDS** that the District Court **DENY** Defendant's First Amended Motion to Dismiss or, in the Alternative, for a More Definite Statement (Dkt. #15) in its entirety.

### IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 7th day of January, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE